## MONROE DAIRY ASS'N v. WEBB.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

CORPORATIONS—BY-LAWS—VALIDITY.

    A manufacturing corporation, authorized by its charter to pass by-laws regulating its business, cannot, by a by-law, compel stockholders to furnish daily to the corporation a certain amount of material to be manufactured, and impose a fine for failure to do so.

Appeal from trial term, Orange county.

Action by the Monroe Dairy Association against Elizabeth S. Webb. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. W. Gott, for appellant.

William F. O'Neill, for respondent.

CULLEN, J. The plaintiff was incorporated under the general manufacturing act of 1848, for the purpose of making butter, cheese, concentrated or condensed milk, and other products of the farm or dairy. The capital stock was fixed by the certificate of incorporation at $6,000. The original by-laws of the company provided that each stockholder should furnish the plaintiff milk from as many cows as he owned shares of stock in the association, at a price to be fixed by the board of trustees. In case of the failure or refusal of any stockholder to furnish such quantity of milk, the board was authorized to refuse to take any milk from him whatever. In the year 1896 the by-laws were amended so as to provide that each stockholder should furnish 20 pounds of milk per day for each share owned by him, and, upon a failure to do so, should pay the association one-eighth of a cent per pound for the amount of the deficiency. The defendant, a maiden lady, was neither the owner of a farm nor of a dairy. She was not an original subscriber to the corporation, but had acquired 45 shares of stock by purchase from other stockholders, which she continued to hold for the period of a year after the enactment of the new by-laws. She furnished no milk to the plaintiff, and the action was brought to recover of her the prescribed penalty of one-eighth of a cent per pound. She challenged the validity of the by-law, but the trial court decided the question against her; and, from the judgment entered on that decision, this appeal is taken.

We think the learned trial judge overlooked the nature and character of such a corporation as the plaintiff, and the distinction between corporations of its class and others. Despite the reiteration in text-books and in many judicial opinions of the statement that corporations have the implied power to impose pecuniary fines for the violation of their by-laws, which may be enforced in an action for debt, we are very much inclined to question the authority of any private corporation in this state, or at least of any private stock corporation, without express legislative authority, to impose fines for the violation of its by-laws for which the incorporator may be sued and amerced in his property. In England, where our law on the subject originated, corporations, as a rule, were municipal. When private, such as trade guilds, they were invested with no small share of governmental powers. Business associations formed solely for pecuniary profit, which constitute the great majority of corporations in this country, were not corporations in England, but merely joint-stock companies. It is said by Mr. Morawetz (1 Priv. Corp. § 491):

"The term 'by-law' was originally applied to the laws and ordinances enacted by public or municipal corporations. The difference between a by-law of a private company and a law enacted by a municipality is wide and obvious. The former is merely a rule prescribed by the majority, under authority of the other members, for the regulation and management of their joint affairs. A by-law of a municipal corporation is a local law, enacted by public officers by virtue of legislative powers delegated to them by the state."

In Re Long Island R. Co., 19 Wend. 37, it was held that an incorporated company had not the power to enact a by-law subjecting stock to forfeiture on account of the nonpayment of installments due thereon without express legislative authority. In corporations or associations which possess the power of expelling their members for breach of their duty to the corporation, or for misconduct as corporators, a corporation may doubtless provide reasonable fines for such misconduct, the payment of which can be enforced by expulsion of the member who fails to pay his fine. But I have failed to find a reported case in this country where recovery has been had for a fine imposed by a by-law of a private corporation.

But whatever view may be taken of the question which we have suggested, we are clear that the by-law enacted by the plaintiff is void, not merely as unreasonable, but as being entirely beyond its corporate power. By the statute under which the plaintiff was incorporated it is provided:

"The trustees of such company shall have power to make such prudential by-laws as they shall deem proper for the management and disposition of the stock and business affairs of such company, not inconsistent with the laws of this state, and prescribing the duties of officers, artificers and servants that may be employed; for the appointment of all officers, and for carrying on all kinds of business within the objects and purposes of such company." Section 7.

This empowered the trustees to enact by-laws for the regulation of the business of the company, but does not give any authority to regulate the private business of the stockholders. Ordinarily, the whole legal duty of a stockholder or corporator in a trading or stock corporation is discharged when he has paid in his subscription to the capital stock, though his pecuniary liability to the creditors of the corporation may be somewhat greater. The management and control of the business is not vested in the stockholders as such, but in the trustees. The stockholder may enter into business on his own account in competition with the corporation, or join in the formation of a new corporation, which by its rivalry will destroy the business prospects of the first. In Driscoll v. Manufacturing Co., 59 N. Y. 96, it was held that the trustees of a corporation organized under the general manufacturing act had no power to enact by-laws not authorized either by that law or the Revised Statutes, and that a by-law providing that the corporation should have a lien on the stock of each stockholder for any debts due from him to the corporation was invalid. Mining and manufacturing corporations in this state are incorporated under the same law as that by virtue of which the plaintiff exists. If this by-law is valid, it is difficult to see why a mining company should not, in case of a scarcity of labor, provide

that each stockholder should perform so many days' work at the mine; a gas company that its stockholders should use so much gas or furnish so much coal; or a bank that each stockholder should keep a certain deposit therein. The learned counsel for the appellant concedes that no such extravagant by-laws could be enacted. We think the proposition too clear for debate, though we are not wanting in authority on the question. In Kolff v. Fuel Exchange (Minn.) 50 N. W. 1036, a corporation was formed for buying, selling, and dealing in coal, wood, and charcoal. It assumed to regulate the price at which the various corporators should sell coal or wood, and prescribed a penalty for failure to comply with such rule. It was there said:

"It is unnecessary to consider whether the by-laws are contrary to public policy and void, because in restraint of trade, and it is also unnecessary to consider whether a corporation might be formed for the purposes indicated by the by-laws. It is enough for the purposes of this action that the by-laws under which the board purposed to hear the charges against plaintiff, and to disfranchise him in case he refuses to pay such fine as it may impose, are wholly outside of anything authorized by the articles of incorporation."

The respondent seeks to distinguish the present case from those suggested,—the mining company, the gas company, and the bank,— and asserts that the plaintiff was incorporated solely for the purpose of enabling individual farmers and dairymen, through the medium of the corporation, to dispose of their produce more advantageously than it was practicable for each to do for himself. Assuming this assertion to be correct, the original incorporators made no contract for such a purpose. Whether they could have made a contract which would have been efficacious for their purpose, and yet have incorporated under the manufacturing statute, it is not necessary to consider. It is probable that an association of the character which the respondent asserts was intended to be formed could have been incorporated under the act for the incorporation of co-operative companies (Laws 1867, c. 971); but the powers of the plaintiff depend on the statute under which it was incorporated, not on the intention of the corporators. The respondent relies largely on the authority of Matthews v. Associated Press, 136 N. Y. 333, 32 N. E. 981. There is was held that a by-law of the corporation prohibiting its members from receiving the news dispatches of other news associations covering a like territory, and providing that for an infraction of the by-law the members should be suspended from the rights and privileges of the association, was valid. The case is not in point. The corporation there was of a different character from the plaintiff. In corporations or voluntary associations, such as clubs, stock, or mercantile exchanges, benevolent institutions, medical societies, and the like, there exists a personal duty on the part of the member to conduct himself, in matters under the cognizance of the corporation, in compliance with its rules. In corporations of this character the power of amotion exists, and a member may be expelled for a violation of the rules of the corporation, or even for an offense which has no immediate relation to the corporate character of the party, but is of so infamous a nature as to render the offender unfit to associate with other mem-

bers. Fawcett v. Charles, 13 Wend. 473. See, also, People v. New York Commercial Ass'n, 18 Abb. Prac. 271; People v. Fire Underwriters, 7 Hun, 248. In all corporations, however, of this class, there is a personal and corporate duty from the member to the corporation, while in mere trading or business corporations having capital stock there is, as already stated, no greater duty resting upon a member than to pay for the stock for which he has subscribed. Even for a failure to comply with this duty, we have seen that his stock cannot be forfeited, and he expelled from the corporation, except where express statutory authority is given. In re Long Island R. Co., supra. "With regard to what are called joint-stock incorporated companies, or indeed any corporations owning property, it cannot be pretended that a member can be expelled, and thus deprived of his interest in the stock or general fund, in any case, by a majority of the corporators, unless such power has been expressly conferred by the charter." Ang. & A. Corp. § 410. If the learned authors, by the expression "any corporations owning property," intended to include clubs, exchanges, and similar organizations which may own property, but have no share stock, the text does not give correctly the law of this state in that respect (People v. Fire Underwriters, 7 Hun, 248), but in other respects it is an accurate statement of the law. The case cited recognizes the distinction between trading and other corporations. A man might commit the most heinous crime, and it would hardly be claimed that thereby he forfeited his bank stock or railroad stock.

The judgment appealed from should be reversed, and the complaint dismissed, with costs. All concur.