### BROWN v. SUPREME COURT I. O. F.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. BENEFIT INSURANCE COMPANY—LAWS—REASONABLENESS.

> Where an unjust and unreasonable burden is put on the member of a fraternal society by its laws or constitution, the courts will protect the rights of such member, though he has not conformed to the provision of his membership contract, requiring resort to the tribunals of the society as a condition precedent to legal proceedings.

2. SAME—SUSPENSION OF MEMBER—REINSTATEMENT.

> A member of a fraternal insurance order was suspended for failure of the subordinate court of which he was a member to make payments required by the constitution of the order. On application for reinstatement the member was rejected under the by-laws, by reason of impairment of his health. An appeal from the decision of rejection would have lain

to the executive council, and an appeal therefrom to the supreme court of the order, both of which bodies were presided over by the person who had suspended the subordinate council, and rejected the application for reinstatement. The supreme court would not meet for two years, and then in California, which was so far distant that the member would be unable to be present. *Held*, that such regulations were unreasonable, and would justify resort to a state court to' compel reinstatement.

3. SAME—SUBORDINATE COURT—OFFICERS—AGENTS.

The constitution of a benefit insurance order authorized suspension of a subordinate court for failure to make the payments required by the constitution, and declared that payments made to an officer of a subordinate court should be received by him as an agent of the member making the payment. *Held*, that a member in good standing with his own court could not be deprived of his right to reinstatement, on proper application therefor, though, by reason of physical disability sustained while a member, and before suspension of such court for nonpayment, he was unable to present a certificate of good health, as required by the society's laws.

Appeal from trial term, Erie county.

Mandamus by Lesser Brown against the Supreme Court of the Independent Order of Foresters. From a judgment of the supreme court (70 N. Y. Supp. 397) granting the writ, defendant appeals. Affirmed.

The proceedings were instituted by an alternative writ of mandamus founded upon the affidavit of the relator, setting forth that he was a member of the defendant, and had been improperly suspended therefrom, and asking reinstatement to all his rights and privileges as a member in good standing in said order. The defendant made return to said writ, traversing some of the facts contained in the affidavit of the relator, and a trial was had, resulting in the judgment aforesaid. The facts were stipulated on the trial.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

O. P. Stockwell, for appellant.
David Ruslander, for respondent.

SPRING, J. The defendant is a Canadian corporation based on the fraternal and mutual benefit plan, and carrying on its business within the state of New York. The beneficial and social features usually incident to such organizations are embodied in its constitution, but its primary purpose is to insure the lives of its members, and afford them assistance in case of physical disability or sickness, in the manner prescribed in its constitution and by-laws. The framework of the organization consists of subordinate orders or courts, with a supreme court as its central or governing body. Assessments are made each month upon its members, and payment is to be made by the members, "thirty-one days before the first of each and every month," to the financial secretary of the subordinate order, by whom the money is to be transmitted to the supreme secretary "on the first week day of each and every month," accompanied by a report showing the condition of the local order of which he is secretary, and other matters provided for in the laws of the defendant. In case this officer is in default in forwarding his monthly report and remittance until the 3d day of the month, the subordinate order may be suspended by the supreme chief ranger, who is the chief functionary of the organization. If this default continues until the end of the

month, then the subordinate order "shall ipso facto stand suspended on the first day of the succeeding month." That is, an entire month may elapse after the payment of the assessments by the members before the order is suspended. The suspension of the order carries with it the members thereof. The constitution (section 248) provides for the reinstatement of the order within 90 days "by sending the proper reports, and by paying the amount for which the court became suspended," and by complying with other demands, "and by each member seeking reinstatement presenting a certificate of good health on form No. 4, or passing the medical board, if required by the executive council or by the supreme chief ranger." The financial secretary of the subordinate order of which the relator was a member neglected to remit to the supreme court the assessments for the month of September, 1900, and this default continued for the entire month, so that the subordinate order was suspended on the 1st day of October by reason of this delinquency. Up to the time of this suspension the relator was a member in good standing of the subordinate order No. 3,664, located in Buffalo, and subsequent thereto; and on the 15th of October, conformably to the constitution and by-laws of the defendant, he applied for reinstatement, but his application was refused on the ground that he had failed to pass the required medical examination. The reason for this failure was due to a surgical operation performed while he was a member in good standing, and before October 1st. It appears to be conceded that the relator is now disqualified for restoration to the order, if his good health is a necessary prerequisite thereto.

The constitution of the defendant provides (section 44) for certain appeals within the order, and they extend along in a sequence to its supreme court; and section 213, subd. 1, prohibits resort to legal proceedings until the various appeals provided for within the order have been exhausted. In fact, the evident aim of the constitution (section 43) is to deprive the member of any resort to the civil courts for redress for any grievances by the action of the defendant or of any of its appellate tribunals, for it enacts that the decision of its supreme court "shall be final and conclusive in all cases." Section 43, subd. 2. In the succeeding subdivision it is added that, if the aggrieved party fails to take an appeal from any decision of the inferior court as required by the charter of the defendant, such party "shall be bound by such action or decision, and shall have no further recourse, whether in law or in equity, in respect of the subject-matter of such action or decision." No appeal from the decision of the supreme chief ranger was taken by the relator, and this omission constitutes one of the objections to the writ in this case. By the express terms of his agreement, the relator has agreed to conform to the constitution and by-laws of the order. He has made his contract, and it is the policy of the courts not to interfere with the internal management of these fraternal societies, where each member stipulates to abide by the constitution and by-laws of the order. Whatever remedies are provided for by the laws of the society must be first undertaken, if such remedies are proper and reasonable. Lafond v. Deems, 81 N. Y. 507; Poultney v. Bachman, 31 Hun, 49;

Johansen v. Blume, 53 App. Div. 526, 65 N. Y. Supp. 987; Niblack, Mut. Ben. Soc. § 11. While due force will be given to the contract made by any member of one of these mutual benefit societies, it cannot be expected that the state courts will abdicate their jurisdiction, and be supplanted by courts provided for by the constitution and laws of the association; and, wherever an unreasonable or unjust restriction or burden is put upon a member of a fraternal society, the courts will interfere to protect the rights of such member. We are disposed in the present case to coincide with the trial justice in his conclusion that the regulations concerning appeals are unreasonable. A reading of the constitution of the defendant shows that the supreme chief ranger is its masterful officer. He first rejected the application of the relator for reinstatement. An appeal from his decision is to the executive council, over which he presides, and which convenes at his volition, or at the direction of a majority of the members composing that body. An appeal from the decision of this council is to the supreme court, and the supreme chief ranger also presides over that body. The next session of this supreme court is at Los Angeles, Cal., in April, 1902, and its regular sessions are held triennially or quadrennially. There was no opportunity, therefore, for the relator to obtain any ultimate decision of his application for a year and one-half after the suspension of the subordinate order to which he belonged; and then, to be present upon this hearing, he must travel 3,000 miles. Any requirement which holds in abeyance the status of an alleged member of the order for two years is unreasonable. And this unfairness is accentuated in view of the burden which substantially prohibits the personal attendance of an aggrieved member residing in New York state at the court which reviews the ruling or decision against him. Again, the prominence given to the supreme chief ranger from the inception to the close of these appeals vests that official with undue authority. Beyond this, the nature of this appeal shows the utter futility of attempting to secure a reversal of the decision of any court within the order. The requirement is imperative that the member seeking rehabilitation must obtain the favorable certificate of the medical examiner, and that certificate this officer very properly declined to give. The supreme chief ranger was within the strict letter of the law of his order when he refused to re-establish the relator in his membership, and no contrary decision could be expected. The fundamental law of the defendant must undergo a change, to afford any relief to the relator within the order.

The constitution further provides (section 147, subd. 2) that the supreme court is not responsible for the acts of the financial secretary or other officers of the subordinate court, and that "all payments, for whatsoever purpose, made to any officer of a court, shall be received by such officer as agent of the member making the payment." The relator was compelled to pay his assessments and dues to this local secretary, and the latter's dealings were wholly with the defendant, as to the payment over of these dues and assessments to the proper officer of the supreme court. The local secretary was not amenable to or under the control of the relator, but was within

the control of the supreme court of the defendant. When the money was paid, it belonged to the defendant. The relator parted with his title to it; and continued, by virtue of its payment, to be a member in good standing. He paid in compliance with the laws of the defendant, and in the only manner permitted by them. Through no dereliction of his own he finds himself suspended, and, by reason of physical disability inflicted since he joined the defendant, and before his order was suspended, is unable to secure reinstatement, and his unfortunate condition prevents him from obtaining other insurance. The constitution of the order may hedge about this local official with declarations that the supreme order is not accountable for his acts, but that he is performing his duties with the defendant solely in behalf of the member; but the acts of the official characterize his agency, rather than statements embodied in the constitution. The supreme court cannot in its dealings notoriously recognize the authority of the financial secretary, and then limit that authority by provisions in its constitution. This is well settled. In Knights of Pythias v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762, monthly payments were required to be made to the secretary of the subordinate section before the 10th of each month. This secretary was required to forward to the board of control these assessments during the month, and, unless received by that body by the last day of the month, the members of the delinquent order were suspended. Restoration was permitted within 30 days if the amounts were paid in, provided no deaths occurred during the interim. There was a clause in the constitution similar to the one under consideration,—that the local officers were to be regarded as the agents of the members. The insured made his payments seasonably, but the secretary failed to remit to the board of control promptly, and the remittance was not received until the 4th day of the month, and in the meantime the member died. The United States supreme court held that the provision constituting the secretary the agent of the insured was repugnant to his acts and visible authority, and hence void, and that the beneficiary named in the certificate of the deceased member could recover. The court, in discussing the effect of this attempted repudiation of the agency of the secretary, use this language at page 267, 177 U. S., page 614, 20 Sup. Ct., and page 765, 44 L. Ed.:

"The position of the secretary must be determined by his actual power and authority, and not by the name which the defendant chooses to give him. To invest him with the authority of an agent, and to deny his agency, is a mere juggling with words. Defendant cannot thus play fast and loose with its own subordinates. Upon its theory, the policy holders had absolutely no protection. They were bound to make their monthly payments to the secretary of the section, who was bound to remit them to the board of control; but they could not compel him to remit, and thus were completely at his mercy. If he chose to play into the hands of the company, it was possible for him, by delaying his remittance until after the end of the month, to cause a suspension of every certificate within his jurisdiction, and, in case such remittance was not made within thirty days from such suspension (section 6), apparently to make it necessary, under section 4, for each policy holder to regain his membership by making a new application, surrendering

his forfeited certificate, making payment of the required membership fee, undergoing a new medical examination, and paying a premium determined by his age at the date of the last application. In other words, by the failure of the secretary, over whom he had no control, to remit within thirty days, every member of the section might lose his rights under his certificate, and stand in the position of one making a new application, with a forfeiture of all premiums previously paid. The new certificate would, of course, be refused if his health in the meantime had deteriorated, and the examining physician refused to approve his application. This would enable the company, at its will, to relieve itself of the burden of undesirable risks by refusing certificates of membership to all whose health had become impaired since the original certificate had been taken out, though such certificate holder may have been previously prompt in making his payments."

A like decision was made in Whited v. Insurance Co., 76 N. Y. 415, 32 Am. Rep. 330. In other states kindred provisions have been held to be nugatory. Schunck v. Gegenseitiger Wittwen und Waisen Fond, 44 Wis. 369; McMahon v. Knights of Maccabees, 151 Mo. 522, 52 S. W. 384; Henry v. Order of United Friends, 52 N. J. Eq. 770, 29 Atl. 508.

Section 175 of the defendant's constitution provides that a member in good standing whose order has been suspended may be admitted into any other court. It is essential, however, that this be done with the sanction of the supreme chief ranger and the supreme secretary, and the application must be made "forthwith upon such * * * suspension," or else be accompanied with "a certificate of good health," and in addition the applicant may be required to pass the medical board. It does not appear that the relator ever received any order or notice that he could be restored to membership pursuant to that provision. The record does not show that there was any other subordinate order of defendant in Buffalo, or accessible to the relator. The return filed and the facts stipulated do not disclose any dereliction of duty on his part in failing to apply for reinstatement in compliance with this section. The sole ground of the objection to his application was the failure to present a satisfactory certificate from the medical examiner. This rejection was made by the officer whose written consent must precede admission in accordance with section 175, and it is fair to assume that he would not receive the relator into another order, when he declined to restore him to the one in which he was in good standing when it was suspended. The relator applied opportunely and in the manner pointed out by the laws of the order to be replaced, and no question was made on the trial that he ought to have pursued some other remedy. On the contrary, it is conceded "that the application was made by the relator to the proper officer of the defendant within the time required by the constitution and by-laws of the defendant." The judgment should be affirmed, with costs and disbursements to the respondent.

Judgment affirmed, with costs. All concur.