(57 Misc. Rep. 405)

### FRITZ v. KNAUB.

(Supreme Court, Trial Term, Orange County. April 17, 1907.)

1. ASSOCIATIONS—MEMBERSHIP—EXPULSION—WAIVER OF SERVICE OF CHARGES.

The constitution of 1902 of the Brotherhood of Locomotive Engineers (article 5, §§ 1, 2) provided for the presentation of charges against a member to the subdivision to which he belonged and for the appointment of an investigating committee. Section 3 provided that, should the committee find any evidence against accused, he should be furnished with a copy of the charges made against him and notified when to appear for trial. *Held*, that though the service of a copy of the charges may have been insufficient, yet where accused appeared at the hearing upon the charges, and also at all adjourned meetings, and made his defense on the merits, without objection to the failure to properly serve him, he thereby waived all objection to such insufficient service.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Associations, § 10.]

2. SAME—EVIDENCE—SUFFICIENCY.
    In an action to declare void a resolution expelling plaintiff from the
    Brotherhood of Locomotive Engineers and to secure his reinstatement, evi-
    dence *held* not to support the charge against him of offering his advice and
    services to railroad officials.

3. SAME—RESORT TO COURTS.
    Plaintiff, having been expelled from the division of the Brotherhood of
    Locomotive Engineers of which he was a member, appealed to the Grand
    Chief Engineer, who affirmed the action of the division. The constitution
    of the order authorized a further appeal to the Grand International Divi-
    sion, whose next session would not be held until about 1½ years after
    plaintiff's expulsion, and which was to be held without the state and at a
    great distance, and whose presiding officer would be the Grand Chief En-
    gineer who had affirmed the decision of the division expelling plaintiff.
    According to the constitution and by-laws, if plaintiff was not reinstated
    within a certain, time, which time expired about six months prior to the
    meeting of the Grand International Division, his insurance in the order
    would be forfeited. *Held*, that plaintiff was entitled to bring an action
    to secure his reinstatement in the order without first availing himself of
    his remedy by an appeal to the Grand International Division.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Associations, § 12.]

Action by Michael F. Fritz against John Knaub, as second assistant
engineer, or treasurer, of Port Jervis Division, No. 54, of the Grand
International Brotherhood of Locomotive Engineers. Judgment for
plaintiff, annulling the resolution or order expelling him from member-
ship in the Brotherhood of Locomotive Engineers, and reinstating
him, with all rights and privileges of membership.

Vanamee & Watts and Charles H. Stage, for plaintiff.
C. E. & S. M. Cuddeback, for defendant.

MILLS, J. This action is brought by the plaintiff against the de-
fendant, as the proper officer of the Port Jervis Division, No. 54, of
the Grand International Brotherhood of Locomotive Engineers, to
secure the decree of this court declaring the resolution of said division
expelling him therefrom to be illegal and void, and directing the re-
instatement of the plaintiff as a member of said division, with all
the rights and privileges of such membership.

The Brotherhood of Locomotive Engineers is an order existing
throughout the United States, having subdivisions in various localities.
The general order or organization is known as the "Grand Interna-
tional Division of the Brotherhood of Locomotive Engineers." This
body holds a convention each two years, which, among other things,
enacts a constitution and by-laws. These constitute the laws governing
the order, both in its grand division and in its subordinate or subdivi-
sions. Port Jervis Division, No. 54, having been established since
prior to 1884, is one of the subordinate divisions. The plaintiff has
been a member of that division since May, 1885, having at one time
held the office of Chief, which is the highest of the division. Its mem-
bership consists of about 150 locomotive engineers, most of whom
reside at Port Jervis. They are in the employ of the Erie Railroad,
and engaged mainly in running locomotives upon the section or divi-
sion of that railroad from New York City to Port Jervis, in Orange
county. Owing, doubtless, to the fact that Port Jervis is the outer

terminus of the section, a large number of the engineers have come to reside there, many owning their own homes.

Some time prior to the summer of 1903 the officials of the railroad company and its locomotive engineers entered into an agreement containing various articles. This agreement was in force during the times hereinafter referred to and the events recited. Rule 34 of such agreement was as follows:

"The company reserves the right to arrange and advertise any regular run, when it is considered necessary for the economical operation or betterment of the service."

In the summer of 1903 the officials of the railroad company considered and determined to try a plan of extending the run of the engines of such section or division to Susquehanna; that is, from Jersey City to Susquehanna, instead of Port Jervis, as had been the practice. This extension would make the run of the engine and the trip taken by the engineer approximately twice as long as the run and trip from New York City to Port Jervis, and, of course, would make the outer terminal far distant from the homes of most of the engineers at Port Jervis. The plan was, therefore, decidedly unpopular with such engineers; and on the 8th of August, 1903, at a special meeting, said division passed a resolution appointing a committee to call on the proper officials of the railroad and protest against "running engineers and firemen through from Jersey City to Susquehanna." The plaintiff was present at such meeting and voted for such resolution. Thereafter, and on or about the 18th of August, 1903, Mr. Morris, the mechanical superintendent of the railroad company over that section or division, came in his car to Port Jervis, summoned the different engineers before him, and told them, in effect, that the company had made up its mind to run the engineers through from Jersey City to Susquehanna. The plaintiff made certain inquiries of him in regard to the terms of the service, with the change made, and in effect told him that he would do the best he could under the circumstances. In various discussions with his fellow members, both in and out of meetings of Division 54, the plaintiff argued that under rule 34, above quoted, of the agreement, the company had the right to alter the run of its engineers, and that they were bound by the agreement to obey the orders making such changes, and, in a letter written to one of his superior officers in the order, the plaintiff made the same contention. The division at no time passed any resolution as to the effect of said rule, or directing or expressing any opinion that the engineers should disobey any such orders, if they were given.

The order has, as one of its features, a mutual life and accident insurance association or department. Each applicant for membership in a division is obliged to apply for one or more policies of such insurance. The plaintiff, in 1903, held three such policies, for the aggregate amount of $4,500, payable to his wife in the event of his death, and had paid in upon such policies, in the shape of premiums or assessments, about $1,500, having held two of the policies, for the aggregate sum of $3,000, since May, 1885. His dues were fully paid, and,

except for the charge upon which he was finally expelled, his standing in the division was good.

In September, 1903, upon charges preferred, the division passed a resolution expelling the plaintiff. From such action he appealed to the Grand Chief Engineer of the order; but before the determination of such appeal the division reconsidered and rescinded its action, upon the ground that sufficient notice had not been given to the plaintiff, and nothing further appears to have been done under those charges.

At a meeting of the division held August 23, 1904, the Chief Engineer of the division, who was its presiding officer, preferred written charges against the plaintiff as follows:

"Port Jervis, Aug. 23, 1904.

"To the Officers and Members of Div. 54 B. of L. E.:

"Dr. Sirs & Bros.: I do hereby prefer charges against Bro. M. F. Fritz for violation of obligation, in that he has offered his advice and service to the officials in their proposed plan to run engineers through from Jersey City to Susquehanna, both before and after the protest of this Div. against this plan was entered.    J. P. Walsh. [Seal.]"

At that meeting the charges were accepted and an investigating committee appointed. On the 27th of August the plaintiff received by mail a copy of the charges, and subsequently, in some form, a notice to attend a hearing upon the charges. The committee made an investigation, took statements of certain people, but not under oath, and made a report sustaining the charges, which report was presented to the division at a meeting held on the 4th of October. The plaintiff was heard in his defense at a meeting held on the 13th of September, 1904, and again at a meeting held on the 11th of October, 1904, to which the matter had been adjourned. At the latter meeting a vote was taken, the report of the committee sustained, and the plaintiff expelled by a large majority. From the action of the division, thus expelling him, he appealed to the Grand Chief Engineer of the order, who shortly thereafter affirmed the action of the division.

The constitution of the order authorizes a further appeal to the Grand International Division, which would next be held in May, 1906. As, under the constitution and by-laws of the order, the plaintiff's insurance would be forfeited unless he was reinstated in membership by the 11th day of October, 1905, he did not take an appeal to the Grand International Division, but brought this action. Neither did he, as authorized by the constitution, make any application for reinstatement, which he might have done after six months subsequent to his expulsion.

Upon the submission of the case, the evidence having been received and counsel heard, the plaintiff claims the decision of the court in his favor upon three grounds, viz.: (1) That no copy of the charge was furnished to him by the chairman of the investigating committee, as required by section 3 of article 5 of the constitution of 1902; (2) that the charge was entirely unproven; and (3) that on October 11, 1904, when the trial ended and the division voted plaintiff's expulsion, the constitution of 1902, including the article or law with violation of which plaintiff was charged, had been entirely repealed; and that, therefore, the division had then no jurisdiction to try defendant un-

der such repealed article or law. These grounds will be examined in their order as just stated.

First. The want of due service of a copy of the charges.

The constitution of the order, adopted May, 1902, was in force until September 1, 1904. Article 5 of it embraced the subject of "Charges." Sections 1 and 2 provide for the presentation of charges against a member to the subdivision to which he belongs, and for the appointment of an investigating committee. Section 3 provided as follows:

"Should the committee find any evidence against the accused, he shall be furnished by the chairman of the committee with a copy of the charges made against him and notified when to appear for trial, at which trial the said committee shall produce the evidence against him," etc.

In this case the only way in which plaintiff was furnished with a copy of the charges was that on August 27, 1903, three days after they were preferred and the committee appointed, he received through the mail a copy of the charges, without any explanation or other matter, in an envelope addressed to him. There is no proof to show that such copy was mailed or sent by the committee or its chairman. Doubtless such service of a copy of the charges was insufficient, and, if the plaintiff had not appeared at the trial, the division would have been without jurisdiction over him to proceed with the trial. Some way, however, he did receive notice of the hearing by the division upon the charges on September 13th, and appeared thereat, and also at the adjourned meetings, including the final one of October 11th, and made his defense upon the merits, without objection to the failure to properly serve him with such copy. By so doing I think that he effectually waived this objection, and that it is not here available to him. People ex rel. Deverell v. Musical Mutual Protective Union, 118 N. Y. 101, 107, 23 N. E. 129; People ex rel. Brewster v. "Old Guard," 87 App. Div. 478, 485, 84 N. Y. Supp. 766; Id., 178 N. Y. 576, 70 N. E. 1105; People ex rel. Baker v. Coachmen's Union Benevolent Association, 4 Misc. Rep. 424, 24 N. Y. Supp. 114.

Second. The plaintiff's contention that the charge was entirely unproven at his trial by the division.

In considering this objection the court here is restricted to determining the question whether or not there was any substantial evidence before the division, at such trial, to sustain the charge. It is not competent for the court here to consider the weight of the evidence, and to attempt to substitute its judgment thereon for the judgment of the plaintiff's fellow members assembled in the division meeting which expelled him. If their determination of his guilt of the charge was totally unsustained by any substantial evidence, such determination should here be considered "as contrary to natural justice," and so subject here to review and correction. People ex rel. Johnson v. N. Y. Produce Exchange, 149 N. Y. 401, 410, 413, 44 N. E. 84; Young v. Eames, 78 App. Div. 229, 241, 242, 79 N. Y. Supp. 1068, affirmed 181 N. Y. 542, 73 N. E. 1134.

· The rule or by-law, with violation of which the plaintiff was charged, is found in section 11 of the standing rules of the constitution and by-laws of the order of 1902, and reads as follows:

"Any member who, by verbal or written communication to railroad officials or others, interferes with a grievance that is in the hands of a committee, or at any other time makes any suggestion to any official that may cause discord in any division, shall be expelled, when proven guilty."

The charge upon which the relator was tried was evidently intended to be preferred under the latter clause of this rule. It was:

"That he [meaning plaintiff] has offered his advice and service to the officials in their proposed plan to run engineers through from Jersey City to Susquehanna," etc.

The gist of this charge is that the plaintiff had "offered"—i. e. volunteered—his advice and service. Upon a careful review of the evidence, including the records of the division showing the trial, I am convinced that there was no evidence at all before the division at such trial, and that there is no evidence here before the court upon this trial, to show that the plaintiff ever offered—i. e., volunteered— any advice or service to the railroad officials in the matter. The evidence at the trial, not having been under oath or taken by question and answer, was perhaps necessarily somewhat indefinite. Giving to it, however, the strongest construction against the plaintiff in support of the charge, it seems to me to show clearly that, upon the occasion referred to in the evidence, about the 18th of August, 1903, Superintendent Morris of the railroad company sent for the plaintiff, as he did for the other engineers of his class, to meet him in his car at Port Jervis, and that the plaintiff did not at all go there voluntarily any more than the other engineers did; further, that upon the plaintiff's arrival, which was after several of the other engineers had come, he was at once informed by the superintendent, in substance, that the company had already determined to make trial of the plan of running through to Susquehanna; and that all that the plaintiff did was thereafter to make certain inquiries of the superintendent as to the details of the plan, e. g., whether the engineers would be furnished with pilots to learn the road, and to state that he would obey the order of the company's officials and run through, viz.:

"If you have decided to run the men through, and give it a trial, all right, Mr. Morris. I will do the best I can."

There was some evidence before the division, at the trial, given by the witness Springstead, to the effect that at a later time the plaintiff told him that he (plaintiff) had told Superintendent Morris that certain named engineers would run through, and that Mr. Morris had asked him to speak to such engineers about it, and that the plaintiff spoke to him about it; he being one of those named. The plaintiff was not upon trial charged with having used his influence with his fellow members to get them to obey the order of the railroad company. There was no evidence to show that this statement of Superintendent Morris to the plaintiff about seeing the other engineers, or the plaintiff's expression to him about the other engineers, was made before the meeting of the engineers with the superintendent at Port Jervis on the 18th of August, or that it was in any manner volunteered by the plaintiff and not a part of the conversation which at that time followed the superintendent's declaration that the company had determined

to make trial of the plan. In fact, the company did subsequently make trial of the plan for about 10 days, and, finding it impracticable, abandoned it. No engineer refused, when the trial was attempted, to obey the direction of the company to run his engine through, and no resolution was ever passed by Division 54 directing such refusal.

The evidence showed that the plaintiff, with his fellow members, both at the meetings of the division and outside, contended that, under rule 34 of the agreement between the company and the engineers, the company had the right to adopt the proposed plan, and require the engineers to run through to Susquehanna, if it chose. I fail to see how such contention on the part of the plaintiff could be regarded as violating any of the rules of the division, or as being in any way disloyal to his fellow members, inasmuch as the division had taken no action whatever upon the subject; that is, in no way had taken the position that such was not the effect of said rule 34. There is nothing in the evidence to show that the resolution of the division to protest against the proposed new plan was based upon any contention that the company, under such agreement, had not the right to adopt it. The plaintiff himself voted in the division meeting for such protest, presumably upon the obvious ground of the great hardship of the new plan to the engineers. It is immaterial, however, whether or not such contention on the part of the plaintiff among his fellows could have been held by the division as a violation of any of its rules or laws, because the charge against him, upon which he was tried, was not of any such violation.

My conclusion, therefore, is that the charge against the plaintiff of offering his advice and service to the officials was totally unproven, and that therefore the action of his fellow members, in finding the charge proven and in voting for his expulsion, must have proceeded upon some entire misapprehension of the law or the facts, and so should here be regarded as contrary to natural justice.

The defendant contends that the complaint should be dismissed because the plaintiff has not availed himself of the remedy given by the constitution to procure reinstatement by an appeal from the decision of the Grand Chief Engineer to the then next Grand International Division Convention. The general rule is well established that in the case of such associations a member is "bound in the first instance to exhaust his remedies by appeal to the higher constituted authorities before he becomes entitled to maintain an action for the settlement of his rights." Austin v. Dutcher, 56 App. Div. 393, 399, 67 N. Y. Supp. 819.

Special circumstances, however, may constitute an exception to this general rule. Thus, in Matter of Brown, 34 Misc. Rep. 556, 70 N. Y. Supp. 397, Id., 66 App. Div. 259, 72 N. Y. Supp. 806, on appeal 176 N. Y. 132, 68 N. E. 145, it was held, in reference to a suspended member of a subordinate lodge of the Order of Foresters, that certain special circumstances warranted the aggrieved member in bringing in this court his action for reinstatement, although he had failed to appeal to the higher authorities of his order from the decision of the lower body suspending him. In that case the constitution provided for two such further appeals, neither of which had been taken by the plaintiff; and it also provided that no member should be en-

titled to bring any civil action until he had exhausted all his remedies under the constitution, and, further, that an aggrieved party, failing to take an appeal from the decision of an inferior body in the order, "shall be bound by such action or decision, and shall have no further recourse, whether in law or in equity." Neither of these provisions appear in the constitution in the case here at bar.

The leading special circumstances in Matter of Brown, which were regarded by the courts as making that case exceptional, were the following, and are practically duplicated in this case, viz.: (1) The appeal there was not from one officer, viz., the Chief Ranger, to a higher and different body; but he himself was the presiding officer of such higher body, and entitled to sit and act as such in determining the appeal from his own decision. This, also, is true in the present case, because the Grand Chief Engineer is made the presiding officer of the meeting of the Grand International Division at which his decision may be reviewed, and, indeed, it cannot there be reversed, except by a two-thirds vote of that meeting or convention. (2) The next session of the higher body to which the appeal might have been taken in that case was to be held at Los Angeles, Cal.—that is, without this state and at a great distance—and was not to be held until nearly two years after the suspension of the aggrieved member. In this case, also, the next session of the higher body—that is, the Grand International Division Convention—was not to be held until May, 1906, nearly two years after plaintiff's expulsion, which was October 11, 1904, and was to be held at Cleveland, Ohio, without the state and at a great distance. In addition to these leading circumstances, in the present case, according to the constitution and by-laws, if the plaintiff were not reinstated by October 11, 1905, six months before the meeting of the appellate body, his insurance would be forfeited. Under these circumstances, it seems proper to hold that it would be entirely unreasonable and a practical denial of justice to require that the plaintiff should have exhausted his remedy within the order by taking the final appeal before bringing this action.

In the whole case I can see no substantial fault in the conduct of the plaintiff—nothing of which his fellow members ought to complain. The gist of his offending seems to have been merely that he took the view that it was the duty of the engineers to obey the order of the railroad officials, if given, to run through to Susquehanna; he taking this view upon the ground that the contract between the company and the engineers gave the company the right to give such order. Whether or not this view of the effect of the contract be correct is still an open question, as no tribunal in or out of the order has held to the contrary. Until such a decision has been rendered, it would seem manifest that every member of the order ought to be at liberty to hold and among his fellows freely express his own opinion upon the question. Any rule prohibiting this would seem unreasonable and despotic. The expulsion from such an order of a member, and especially of one of so long and creditable standing as the plaintiff, and the consequent loss to him of the provision which for fully 20 years he has been making, by paying insurance charges aggregating a large sum, for the support of his wife after his death and for his own aid in case of injury or sick-

ness, is a very serious matter and should not be had except for substantial cause.

The plaintiff, therefore, is entitled to the relief asked in the complaint, viz.; judgment annulling the resolution or order expelling him, and reinstating him, with all the rights and privileges of membership, and for costs.