PAUL H. BRAY, Plaintiff, *v.* THE GRAND LODGE KNIGHTS OF PYTHIAS, etc., and Another, Defendants.

Supreme Court, Westchester Special Term, December, 1923.

Fraternal benefit associations — invalid assessment for purpose of building temple — edict of grand chancellor impairing rights of certificate holders in good standing void — investment of " reserve fund " in vacant land illegal — injunctions.

An incorporated fraternal benefit association is without legal power to levy an assessment upon its members for the purpose of raising money to purchase land upon which to build a temple for its corporate purposes where authority for so doing is not contained in its charter.

The Grand Lodge Knights of Pythias, duly incorporated, desiring to finance in part the building of a temple for lodge and other corporate purposes, adopted

the expedient of compelling each of its members and also each of its subordinate lodges to purchase a ten-dollar bond, but the returns not being satisfactory the grand chancellor issued an edict threatening non-paying members with suspension " from all benefits until the same is paid." *Held,* that the proceedings which culminated in said edict were null and void and ineffectual to impair the rights of certificate holders in good standing.

Where in an action brought by one suing on his own behalf and that of others similarly situated, as members of the order, the complaint alleges that plaintiff is the holder of two death certificates; that he has paid all dues and assessments properly levied and is in good standing in the order; that he has been interfered with in the exercise of his rights as a member of the order because he has not bought a bond and that for the same reason he is threatened with suspension from all benefits, he will be granted judgment for an injunction to prevent the suspension from benefits of those subordinate lodges and the members of the order who are delinquent in the matter of purchasing bonds.

The " reserve fund " is sacred as a continuing security to those who hold benefit certificates and the investment of a portion thereof in vacant land was illegal and improper, and the fact that this was done because of the failure of the members to purchase the bonds was immaterial, and the judgment to be entered herein will direct that within six months the corporation defendant cause to be restored to the reserve fund the moneys used therefrom in the purchase of said site, including moneys used resulting from the hypothecation of Liberty bonds belonging to the reserve fund.

The judgment will also contain a provision permitting either party to apply at the foot thereof from time to time for such further direction as may be proper.

ACTION for injunction.

*Arthur C. Blatz,* for plaintiff.

*Pope B. Billups (Humphrey J. Lynch,* of counsel), for defendants.

TAYLOR, GEORGE H., JR., J.   Desiring to finance in part the building of a temple for lodge and other corporate purposes, the corporate defendant adopted the expedient of compelling each of its 5,000 members, and also each of its subordinate lodges, to purchase a $10 bond; and when the returns were not satisfactory the defendant grand chancellor issued an edict, afterwards approved and ratified by the grand lodge, threatening the non-paying members with suspension " from all benefits, until the same is paid."   The plaintiff, suing on his own behalf and for those similarly situated as members of the order, alleges that he holds two death benefit certificates; that he has paid all dues and assessments properly levied, and is in good standing in the order; he alleges that he has been interfered with in the exercise of his rights as a member because he has not bought a bond, and that he is threatened with suspension from all benefits for the same reason.   He also alleges the claimed improper use by the defendants of the reserve fund, which he says is dedicated to and should be held sacred for the payment of death benefits; he alleges, and it is not disputed, that this fund to the

extent of upwards of $20,000 has been used in the purchase of a lot for the temple. The plaintiff seeks in this action (a) an injunction to prevent the defendants from carrying out their threats of suspension from benefits of those subordinate lodges and the members of the order who are delinquent in the matter of purchasing bonds, and (b) a direction restraining further use of the reserve fund for the purchase of land or for the construction of the temple, and his counsel intimates that there shou'd be a mandatory judicial direction that the reserve fund thus depleted be restored to its former condition by having replaced therein the moneys so used in purchasing the property. The defendants contend that the scheme involving the compulsory purchase of bonds is legal; they admit, in effect, that the diversion of the reserve fund moneys used in the purchase of the land for the temple was illegal, and they urge that the plaintiff has no standing because he has not exhausted his remedies in the premises in the tribunals of the order.

I will discuss the matter in the order of subjects above indicated.

*First.* It is fundamental that the power to levy fines, dues and assessments depends upon the provisions of the charter (here certificate of incorporation) and the constitution and by-laws (see 29 Cyc. 1, and cases cited); in the instant case no authority is given in any of those documents nor by the law of the state to levy an assessment for the purposes of the purchase of land and building for a temp'e; and as was said by Justice Blackmar in a somewhat similar case: " If that power is not found in the charter of the club it does not exist. The charter is the whole body of the general laws of the state applicable to corporations of this character. I have searched the laws in vain for an authority to levy assessments under that name." See his opinion in *Thompson* v. *Wyandanch Club*, 70 Misc. Rep. 299.

The plaintiff and his fellow-members acquired certain vested rights which are evidenced by benefit certificates, and which rights cannot be impaired by any such action as culminated in the threatened suspension " from all benefits " of subordinate lodges and members in good standing who had paid the lawful dues and assessments prescribed in the constitution. *Thompson* v. *Wyandanch Club, supra,* and cases there cited. This is not a case where " the contract of insurance or the charter   *   *   *   expressly or otherwise clearly prov'des that the assessments may be changed from time to time " as was the situation in *McClement* v. *Order of Foresters*, 222 N. Y. 470, 477; and while it may be conceded that " where the member in his original application has agreed to conform to the laws of the order then in force or thereafter to be enacted, the society has the power   *   *   *   to change such laws

even so far as to affect rights to the benefit fund " and to reduce the amount which a given member might receive for benefit (see opinion of Pound, J., in *Everett* v. *Supreme Council Catholic Benevolent Legion*, N. Y. L. J. Aug. 22, 1923), no authority appears to exist to the effect that rights which a member has under his benefit certificate may be taken away from him because of his refusal to pay an assessment not contemplated by the charter of the corporation, its constitution or the laws of the state. I have determined, therefore, that the proceedings of the grand lodge culminating in the grand chancellor's edict threatening " suspension from benefits " were null and void and were ineffectual to impair the rights of certificate holders who were in good standing.

I see no objection to the voluntary purchase of bonds by members; but those who do not purchase may not be suspended from benefits by reason of their failure to purchase. A somewhat analogous situation in the case of a manufacturing corporation which was authorized to pass by-laws governing its business was judicially condemned in an authority which holds that such a corporation, by its by-laws, cannot compel stockholders to furnish daily to the corporation a certain amount of material to be manufactured, the by-laws imposing a fine for failure so to do. *Monroe Dairy Assn.* v. *Webb*, 40 App. Div. 49.

*Second.* No argument is required to demonstrate that the investment of a portion of the " reserve fund " in vacant land was wholly illegal and improper. Ins. Law, art. 7 (Laws of 1909, chap. 33, and acts amendatory thereof); Id. (Laws of 1909, chap. 35, § 233, subd. 3); Id. (Laws of 1909, chap. 33, § 16). The circumstance that this act was done under the compulsion of the failure of the members to pay the illegal assessment, that is, to purchase bonds, is of no moment. That fund is sacred as a continuing security to those who hold benefit certificates. See *McClure* v. *Levy*, 79 Hun, 235; 29 N. Y. Supp. 352; affd., 147 N. Y. 215. Therefore, the act of the defendants in using the cash of the reserve fund, and that raised by the hypothecation of Liberty bonds in which a part of that trust fund was properly invested, must meet with judicial disapproval, even though it is apparent that the defendants had a thoroughly unselfish purpose in view, namely, the procuring of a temple building which all interested seem to agree would be of benefit to the order and its members. It follows that further encroachments upon the reserve fund must be restrained, and that within a reasonable time restitution of the diverted moneys should be had. This may be accomplished, if necessary, at least in part by the sale of the land purchased for the temple.

*Third.* The contention is made by the defendants that the

plaintiff must resort to the tribunals or courts of the order for redress of his grievances before maintaining this action for that purpose. That rule undoubtedly applies to matters of internal policy (*Fay* v. *Supreme Tent, etc.,* 38 Misc. Rep. 427; 77 N. Y. Supp. 994; *Baxter* v. *McDonnell,* 155 N. Y. 83); it does not apply to the instant case which involves questions of law on facts substantially undisputed; under the circumstances disclosed in the record it would appear to be useless to try to have these questions litigated otherwise than in the regular judicial forum where they may be decided with finality. See 7 C. J. 1122, citing *Gray* v. *Chapter General, etc., Knights of St. John & Malta,* 70 App. Div. 155; 75 N. Y. Supp. 267; *Fay* v. *Supreme Tent, etc.,* 38 Misc. Rep. 427; 77 N. Y. Supp. 994; *Brown* v. *Supreme Court, etc., Order of Foresters,* 34 Misc. Rep. 556; 70 N. Y. Supp. 397; affd., 66 App. Div. 259; 72 N. Y. Supp. 806; affd., 176 N. Y. 132. In addition no such defense is pleaded.

Judgment is, therefore, directed in favor of the plaintiff and against the defendants as follows:

(a) Restraining the defendants from enforcing the payment of the assessment of ten dollars involving the compulsory purchase of a bond for the construction of a temple against the plaintiff or any other member of the corporate defendant;

(b) Restraining the defendants from using further moneys in the reserve fund in connection with the purchase of a site for the construction of a temple, or for such construction;

(c) Directing the corporate defendant within six months to cause to be restored to the reserve fund by a sale of the site purchased or otherwise, the moneys therefrom used in the purchase of said site, including those moneys so used resulting from the hypothecation of Liberty bonds belonging to the fund.

The judgment will also contain a provision permitting either party to apply at the foot thereof from time to time for such further direction as may be proper.

The plaintiff's opposition to the plan involving the compulsory purchase of bonds with the penalty of suspension attached thereto, which opposition I find to have been well founded, developed after his defeat for re-election to the office that he had previously held in the order. The defendants illegally used the reserve fund because of failure of receipts from bond sales, which failure they claim resulted from plaintiff's circularizing of the membership in opposition to the plan. The officers of the corporate defendant acted unselfishly, even if illegally, in the matter, and for what they believed to be the order's best interest. I was favorably impressed with all o fhte parties and witnesses in the controversy. They are

Misc. 769]     Surrogate's Court, New York County, December, 1923.

persons of color, of splendid intelligence and well meaning, all of whom have availed themselves of the great opportunities, educational and otherwise, which our common country affords to all of us, regardless of race or creed.   I think it will be possible for all of those interested on both sides of the case to co-operate with one another, with the assistance of the learned counsel on both sides, to formulate some new, different and legal plan which will result in the building of the temple — a consummation which both sides of the controversy agree should be had as the temple is needed and should be built.

Judgment accordingly, but under the circumstances without costs; settle decision and judgment on notice; the defendants will kindly present their requests to find upon which I will pass, at the time of the settlement of the form of the decision and judgment.

Judgment accordingly.