(70 Misc. Rep. 299.)

## THOMPSON v. WYANDANCH CLUB.

(Supreme Court, Special Term, Kings County. January 25, 1911.)

1. Clubs (§ 7*)—Dues and Assessments—Bad Faith.
   Evidence *held* not to show bad faith in the increase of the annual dues of members and levying of an assessment by a hunting and fishing club.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 5; Dec. Dig. § 7.*]

2. Clubs (§ 8*)—Powers of Directors.
   Powers vested in the directors of an incorporated club to secure the payment of the debts of the club out of its fund are not nullified by the fact that in certain contingencies the directors may be personally liable for the debts or some of them.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 6; Dec. Dig. § 8.*]

3. Clubs (§ 7*)—Dues—Power to Increase.
   A club organized under Act May 12, 1875 (Laws 1875, c. 267), which provides that the fees and dues of the members of societies or clubs authorized thereunder shall be established by by-laws which shall be from time to time modified or changed, has power to increase the annual dues of members by an amendment of its by-laws.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 5; Dec. Dig. § 7.*]

4. Clubs (§ 7*)—"Assessment."
   The term "assessment," as applied to the act of an incorporated club, always implies a burden imposed in invitum and a single act as distinguished from recurring acts.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 5; Dec. Dig. § 7.*
   For other definitions, see Words and Phrases, vol. 1, pp. 549–554; vol. 8, pp. 7583, 7584.]

5. Clubs (§ 7*)—"Fees."
   "Fees" are the amount paid for a privilege, and are not an obligation, but the payment is voluntary.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 5; Dec. Dig. § 7.*
   For other definitions, see Words and Phrases, vol. 3, pp. 2712–2716.]

6. Clubs (§ 7*)—"Dues."
   The term "dues" refers to obligations into which members of a club enter to pay a sum, to be fixed usually by by-laws, at recurring intervals for the maintenance of the organization.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 5; Dec. Dig. § 7.*
   For other definitions, see Words and Phrases, vol. 3, pp. 2258, 2259.]

7. Clubs (§ 7*)—Assessments—Power to Levy.
   The membership corporation law (Consol. Laws, c. 35) containing no provision authorizing the levy of assessments on members, an incorporated club has no power to make such a levy.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 5; Dec. Dig. § 7.*]

8. Clubs (§ 7*)—Assessments—Power to Levy.
   Where the laws of the state constituting a part of the charter of an incorporated club give it no power to levy assessments on members, long continued corporate action and acquiescence therein in levying and collecting assessments cannot operate as a practical construction of the charter as giving such power.
   [Ed. Note.—For other cases, see Clubs, Cent. Dig. § 5; Dec. Dig. § 7.*]

Action by Edward Thompson against the Wyandanch Club for an injunction. Injunction continued.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Hill, Lockwood, Redfield & Lydon (John L. Hill, of counsel), for plaintiff.

Wingate & Cullen (George W. Wingate, of counsel), for defendant.

BLACKMAR, J. The defendant, which had theretofore been a voluntary association or club, was incorporated under the name of the Brooklyn Gun Club on May 15, 1885, pursuant to an act entitled "an act for the incorporation of societies or clubs for certain lawful purposes," passed May 12, 1875 (Laws 1875, c. 267). Its name was subsequently changed to the Wyandanch Club. The objects stated in the certificate of incorporation were "the enforcement of the game and fish laws, the propagation of game and fish, and the hiring and leasing of lands and waters for shooting, fishing and hunting purposes." The law under which it was incorporated authorized it "to make and adopt a constitution, by-laws, rules and regulations for the government of said corporation, and for the admission, voluntary withdrawal, censure, suspension and expulsion of its members, for the establishing and collection of the fees and dues of its members," and gave it power "from time to time to alter, modify or change such constitution, by-laws, rules and regulations." The authority so conferred has remained practically unchanged through all amendments and codifications of the law. Section 8, Membership Corporations Law (Consol. Laws, c. 35).

The corporation adopted a constitution and by-laws. The constitution provided that the directors should have power to establish, alter, and amend by-laws for the government of the club. That the by-laws, and not the constitution, established the dues, is shown by section 1 of article 2 of the constitution and article 4 of the by-laws. See book of 1889. The by-laws at first provided that the initiation fee should be $150.00, the annual dues $50.00, and that an assessment not exceeding $10.00 per year could be made by a two-thirds vote of the club. Certificates of membership were authorized transferable upon the book to any person elected to membership on the payment of $100.00, providing that the certificate on the death of a member could within six months be so transferred by his legal representatives. Subsequently and prior to 1896 the by-laws were amended making the annual dues $100.00, and providing that in case of a member dropped for nonpayment of dues, or who resigned or was expelled, the certificate might be sold by the treasurer, and the proceeds, after paying dues, assessments, fines, and other indebtedness to the club, paid to the member. Book of 1896. All dues and indebtedness to the club were thereby practically made a lien on the membership certificate which was valuable for the purpose of qualifying incoming members. Subsequently, and prior to 1896, the by-laws were amended to provide that assessments not exceeding $25.00 per year might be made by a two-thirds vote of the board of directors. During all this time the club membership remained small, not exceeding 45, but the club had gradually grown in importance. It had acquired from 1,800 to 2,000 acres of land, a large and elaborate clubhouse, fish ponds, stables, kennels, and other property. All this could not be and was not done with the money produced by the an-

nual dues and assessments expressly authorized by the terms of the by-laws as quoted.

From time to time so-called assessments were levied by the club upon its members for the purpose of acquiring land, paying debts, and providing for current expenses. The aggregate amount of these "assessments" levied and paid for the eight years prior to 1910 exceeds $47,000. Some of these assessments were as follows: On January 10, 1893, the by-laws were amended to authorize an assessment to pay indebtedness existing January 1, 1893, and under such special provision an assessment of $325.00 was levied on each member. On March 1, 1907, the by-laws were amended to authorize an assessment of $100.00 upon each member, the amendment providing that immediately after the assessment thereby contemplated shall have been made such clause shall be deemed repealed. Under such authority the assessment was levied. On January 11, 1898, at the annual meeting of the club, an assessment of $20.00 was levied to meet the deficit during the preceding year. On April 22, 1899, the directors amended article 4 of the by-laws so as to give the directors (then called trustees) power by a two-thirds vote to assess each member his share of the purchase price of certain property which the club had determined to purchase. Thereupon an assessment of $357.16 was levied on each member. At the annual meeting of January 9, 1900, an assessment of $60.00 was made on each member "to wipe out the debt of the club." At the annual meeting of the club on January 8, 1901, a resolution was passed authorizing the board of directors to levy an assessment sufficient to cover the sum of $3,767.90, being the shortage for the year 1900, and pursuant thereto the directors resolved that "an assessment of $85.00 be imposed upon each member of the club." Subsequently assessments were levied as follows: In 1902, $100.00; in 1903, $180.00; in 1904, $100.00; in 1905, $125.00; in 1906, $100.00; in 1907, $90.00; and in 1908, $200.00. The plaintiff joined the club early in its history, and has acquiesced in and paid all the assessments since levied except the last one as hereinafter set forth. On January 26, 1909, at the annual meeting, a motion was made to levy an assessment of $200.00 on each member. The motion was carried; the plaintiff and five others voting in the negative. All the members except the plaintiff, who claims the assessment was illegal, and possibly two or three others, have paid the assessment. At a meeting of the directors held December 28, 1909, the by-laws were amended increasing the dues to $200.00 per year, payable in January and July in each year. On April 10, 1910, the by-laws were amended to authorize the directors to levy an assessment of $200.00 on each member in lieu of the one levied at the annual meeting on January 26, 1909, the legality of which had been questioned by the plaintiff; and immediately thereafter the board voted to impose such assessment. The plaintiff declines to pay either the assessment so levied or the dues at the rate of $200.00 per annum, claiming that both the levy of the assessment and the increase of dues were illegal.

On October 18, 1910, the directors passed a resolution suspending the plaintiff from the privileges of the club, dropping him from membership from and after November 1, 1910, unless before that date

he should pay such arrears and directing that the share (i. e., certificate of membership) of plaintiff be sold as provided by the by-law. This action is brought to restrain the enforcement of such resolution, and the present motion is for an injunction pending the action.

Both parties request that the question between them be considered and decided on the merits. The basic question is whether the plaintiffs owes the defendant the amount of the assessment and the dues at the increased rate. This depends upon whether the corporation had power against the will of any of its members to increase the amount of the dues or to levy an assessment. I regard this as a pure question of law. I omitted in the statement of facts all reference to questions of club policy, for I deem them entirely irrelevant to the issue before me. Whether the club should be continued as a hunting and fishing club or should be dissolved is for the club itself, and not for the court, to determine. As to all matters over which the club has jurisdiction, it acts by a majority, unless otherwise prescribed by the law of its being. The question before me is one of power and good faith in its exercise. I have read the papers containing suggestions as to how the power of a majority might be abused, but I remain unconvinced that the suggestion applies to this case. There has been no recent change in the policy of the club. The trustees or directors have been from the beginning and now are maintaining it as a hunting and fishing club. The amount of the assessment which the plaintiff refuses to pay is no heavier than some of those levied in the past with his approval and aid. The claim that, because directors of a membership corporation may be liable for its debts, they are disqualified in acting to raise money for their payment, is new to me. The debts are debts of the club primarily and powers vested in the directors to secure their payment out of the funds of the club are not nullified by the fact that in certain contingencies they may be personally liable for the debts or some of them. Besides, there is no evidence before me that the directors were liable for the debts to pay which the dues were increased and the assessment levied. I therefore dismiss the claim that the club has acted in bad faith, and shall consider simply the question of power.

First. Had the directors power to increase the dues to $200.00 per annum by the amendment to the by-laws on April 10, 1910?

Second. Was the assessment valid? These questions may be discussed separately.

First. Was the increase of the dues valid? I am unable to see why the well-recognized rule applying to and applied by all clubs that the amount of the annual dues rests in the discretion of the club does not govern. The relative powers and duties of clubs and their members rest in contract. That contract consists of the laws of the state, the certificate of incorporation authorized by such laws, and the by-laws. The term "by-laws" may be used generically to include constitution, by-laws, rules, and regulations. A contract cannot be changed without the consent of all the parties to it. Every member of an incorporated club is a party to the contract of membership. But a member may consent to a change as well before the change is made as after. And a consent that certain of the terms of member-

ship may be altered by a majority either of the corporators or of a board of directors or trustees is a consent to whatever change they may make. The very essence of corporate life is the rule of the majority. Joining a corporation implies a consent that the majority may govern within the prescribed scope of their powers. The corporate will is expressed through its by-laws. A by-law is in its nature subject to change. It is an expression of the continued will of the corporation. As I understand the law, it can always be altered unless the power to alter it is limited by law or by contract. The difficulty usually is to determine what is the proper field for the operation of a by-law. Usually this question can be solved by recourse to the charter. The law of 1875 (Laws 1875, c. 267), which is part of the charter of the club, expressly provided that the fees and dues of the members should be established by by-laws which should be from time to time modified or changed. The charter of the club, therefore, in terms authorized a change in the amount of the dues, for it provided that the dues should be fixed in the by-laws, and that the by-laws were subject to change. Sometimes by-laws operate to create and bring into being vested rights, which exist independent of the by-laws. These rights cannot be thereafter impaired by a change of the by-laws. Even if the by-laws are changed, the right is unimpaired. This was the case in Kent v. Quicksilver Mining Company, 78 N. Y. 159. Under the operation of the by-laws, rights in capital stock were created. It was held that these rights could not be impaired by a change in the by-laws. So in Wright v. Knights of Maccabees, 196 N. Y. 391, 89 N. E. 1078, 134 Am. St. Rep. 838. A contract of insurance was issued under the by-laws, and it was held that an amendment of the by-laws could not impair the contract of insurance, even though a general power to amend the by-laws was reserved. In these cases and so far as I know in all like cases, the courts have protected rights created under by-laws, but existing independently of them. But, where the Legislature has provided that the general rules governing the relation of the members may be enacted by by-laws, I know of no case holding that by-laws, regularly enacted in good faith and applying to all members alike, regulating such relations, are invalid. I hold, therefore, that the increase of the dues was valid.

Second. Was the assessment valid? This is a different question. The right to impose dues was expressly granted in the charter of the club, but the very question now for consideration is whether the charter confers the right to impose assessments. If that power is not found in the charter of the club, it does not exist. The charter is the whole body of the general laws of the state applicable to corporations of this character. I have searched the laws in vain for an authority to levy assessments under that name. Membership corporations had by the Laws of 1875 power to establish and collect fees and dues. The present expression of the law is that such a corporation may make by-laws regulating, with other things, the fees and dues of members. Unless a power to impose fees and dues includes power to levy assessments, such power does not exist. The term "assessment" always carries with it the idea of a burden imposed in invitum, and a single act as distinguished from recurring acts. Every man

experienced in business recognizes the meaning of "assessment" as distinguished from "fees" or "dues." Fees are the amount paid for a privilege. They are not an obligation as the payment is voluntary. Such is an initiation fee of a club. With reference to clubs and other membership corporations the meaning of the word "dues" is settled. It means the obligation into which the members enter to pay a sum to be fixed, usually by by-laws, at recurring intervals, for the maintenance of the organization. Every club has its initiation fee and some have fees for other special privileges. In all cases the payment is voluntary. Every club has its dues fixed by itself, payable periodically, and creating a debt by the member to the club. An assessment, such as was levied in this case, is different. It is not a fee. It is not dues; and as the club was given no power to impose obligations on its members, except to establish fees and dues, it was done without authority and was void.

The question of the power of a club to make provision for its debts for the purchase of property and for current expenses has arisen so often in the chronic bankrupt state of most clubs, and so many devices have been used to raise money that I thought I should have no difficulty in finding cases which would authoritatively decide this question. But such research as I have had time to make, extending throughout most of the states and England, has disclosed but one case on the subject. Duluth Club v. MacDonald, 74 Minn. 254, 76 N. W. 1128, 73 Am. St. Rep. 344. This case inclines to hold that membership corporations have no inherent power to levy assessments on their members. But the very statutory scheme of organization of membership corporations is inconsistent with the existence of such a power. It authorizes such a corporation to purchase and hold land to the extent of $6,000,000. Section 12, General Corporation Law (Consol. Laws, c. 23). If the power to assess existed, the majority of the board of directors might impose a heavy burden on the members by assessing for the purchase of property. On the other hand, the liability for the debts of the company rests on the directors. Notwithstanding this, they may exercise the power given them by the statute of fixing the dues, and, if too heavy, the members may avoid them by resigning. But their liability for the debts is inconsistent with an implied power to shift the debts on the members by an assessment operating immediately. A power to impose an obligation on another against his will cannot be spelled out of doubtful language. Unless the power to assess is plainly expressed in the law, it should be held not to exist. The meaning of the words "fees, dues, and assessments" are so well known with reference to club life that it seems unnecessary to resort to dictionaries and cyclopedias for a definition. Fees and dues may be established under the membership corporations law (Consol. Laws, c. 35). Assessments are not mentioned, and I am forced to the conclusion that the corporation has no power to levy assessments.

But it is claimed that long continued corporate action in levying and collecting assessments is evidence that the power exists or at least is a practical construction by the club of the terms of its charter. The principle that the acts of the parties are evidence of the mean-

ing of a contract which they make is well known.  In fact, such vitality has that doctrine that the parties by their own acts may place on their contract a construction which it would be difficult to read from the latter.  But the parties can construe only such contracts as they have the power to make.  Now the parties here, the members of this corporation, had no power whatever over that portion of their contract which is found in the laws of the state.  The members cannot change the laws, and consequently they cannot by their acts enlarge the powers conferred on the corporation by the law.  If the doubt were in the construction of the by-laws, long continued conduct acquiesced in by the members might be sufficient to determine the construction.  But the conduct of the members, no matter how long continued nor how fully acquiesced in by all, cannot change the law nor enlarge the powers of the corporation one iota.  In determining the meaning of the law, I must disregard the conduct of the plaintiff in participating in the levying of assessments in the past.  The argument that it is ungraceful for one who has been a moving factor in levying assessments in the past to refuse the payment of this one cannot influence my decision on a pure question of law.

I hold that the defendant had power to raise the dues in the discretion of the body which was authorized to make its by-laws; but that it had no power either by by-laws, or vote of the directors or of the club itself, to levy special assessments.  I do not rest my decision on the argument that such a power is dangerous or that it might be abused, for in view of the past history of the club I see no evidence of abuse; but solely on my interpretation of the statute.  The club could establish fees, viz., amounts to be paid for privileges, and dues, viz., stated amounts which the members must pay periodically for the continuing privilege of membership; but not special assessments imposing a debt on the members against their will.  Cases might be imagined in which it is difficult to distinguish between dues and assessments; but in this case the difference is plain.

As the defendant proposes to drop plaintiff from membership and sell his certificate to satisfy not only the unpaid dues but the assessment, the injunction should be continued; but expressly without prejudice to a regular proceeding to enforce the payment of the dues.