In the Matter of the Application of MONROE CHAPTER, No. 57, ORDER OF THE EASTERN STAR, for a Peremptory Order of Mandamus.

Supreme Court, New York County, June 21, 1927.

**Corporations — membership corporations — mandamus to compel Grand Chapter of Order of Eastern Star to reinstate local chapter — assessments were made against individual members to defray expenses of visit of Grand Matron — petitioner failed to make payment and it was suspended and charter revoked — Grand Chapter has no power to levy assessments — powers of Grand Chapter are regulated by Laws of 1916, chap. 56, under which it was incorporated, General Corporation Law and Membership Corporations Law — power to levy " fees " and " dues " does not include power to levy assessments (Membership Corporations Law of 1926, § 20).**

The Monroe district of the Order of the Eastern Star of the State of New York, pursuant to a regulation of the Grand Chapter, adopted a regulation whereby each member of the order within the district was assessed twenty cents to defray the expenses of the visit of the Grand Matron of the State.    The petitioner refused to pay the assessment and its charter was revoked.    The Grand Chapter was organized under chapter 56 of the Laws of 1916, which provides that it shall have such rights, powers and privileges as corporations organized for similar purposes under general laws.    Therefore, the power of the Grand Chapter is to be determined by the statute of its creation and by the General Corporation Law and the Membership Corporations Law.    The several laws do not authorize or give the Grand Chapter power to levy assessments.

While the Grand Chapter has the power, under section 20 of the Membership Corporations Law of 1926, to levy " dues " and " fees " an assessment does not come within the definition of those terms.    " Dues " and " fees " are voluntary, while an assessment is involuntary.

Inasmuch as the assessment was illegal, the petitioner is entitled to a peremptory order of mandamus.

PROCEEDING for a peremptory mandamus order to require the return to petitioner of its charter, which had been suspended, and to reinstate individual members of petitioner to membership, and for other incidental relief.

——————— ———————, for ——————— ———————.

——————— ———————, for ——————— ———————.

TOWNLEY, J.   This proceeding is brought by Monroe Chapter, No. 57, a subordinate lodge or chapter of the Order of the Eastern Star of the State of New York, for a peremptory mandamus order requiring the respondents to return to said chapter its charter, which had been suspended, and to reinstate the individual members of such chapter to membership in the order, and for other incidental relief. At Special Term an alternative mandamus order was granted requiring trial of the issues.   At the trial there was no substantial dispute as to the basic facts, and the issue presented is solely a legal one, namely, whether the respondent order had the legal power and authority, against the will of any of its members, to levy an assessment.   Briefly, the essential facts, which are undisputed, are as follows: The Order of the Eastern Star is a membership corporation created by special act of the Legislature, namely, chapter 56 of the Laws of 1916.   This order has a membership within the State of about 130,000 in 750 subordinate lodges or chapters, located in forty-six geographical divisions of the State, known as "districts."   The relator, Monroe Chapter, No. 57, has approximately 506 members, and is one of twenty-eight subordinate chapters in the Monroe district, which together have an aggregate of 5,000 members.   The supreme governing and legislative body of the order is the Grand Chapter, which meets annually in October, and is composed of officers of the order and delegates from the respective subordinate chapters.   A Grand Matron, annually elected, is the executive head of the order, and at all times, except when the Grand Chapter is in annual session, it is her duty to exercise all the executive and judicial functions of the Grand Chapter, she having power among other things " to convene any chapter within the jurisdiction, preside therein, inspect its proceedings, examine its books and properties, and require its conformity to the laws of the order," and " to suspend the charter of any chapter for just cause for a limited period, or until the next annual session of the Grand Chapter."   (See section 20 of the so-called constitution.) Although not required by any provision of the so-called constitution of the order, nor its by-laws or regulations, ever since 1889, or even earlier, the Grand Matron and her staff have customarily made annual visits to each of the various " districts " at some chapter

in each district selected as best located and suited for the gathering of the members of the various chapters in that particular district. These annual district visits have been considered by the officers of the order and by the Grand Chapter appropriate means of affording the Grand Matron, who is the chief executive officer of the order, an opportunity of keeping in touch with the numerous subordinate chapters of the order and of coming into personal contact with the individual members of the organization within the respective districts. These annual visits have been deemed by the order appropriate to promote harmony and good feeling and to prosper the interests and welfare of the order and its members. Whether such annual visits be characterized as social or official visits has no bearing on the merits of the question here involved. The question of the propriety of having such visits is a matter of internal policy of the order, and should be left for decision by the proper authorities within the order itself.

The basic question for the court's determination is whether the expenses of such annual visits can be defrayed and met by an assessment, which assessment, unless paid, may be enforced by punishment of suspension of the charter of a subordinate chapter, or by suspension from membership in the order. This depends on whether the respondent order has the legal power and authority to make and levy such an assessment, and in the case at bar is not a question of good faith in the exercise of the asserted power or the purpose sought to be accomplished. Prior to 1923 there was no provision in the so-called constitution nor in any by-law or regulation of the order for defraying the expenses of these annual visits. By the prevailing practice prior to 1923, expenses, except traveling expenses, were paid by the particular chapter or by the District Deputy Grand Matron of the district visited, although the visitation was intended to include and was open to all the various chapters in such district. With the purpose of apportioning these expenses more equitably among all the subordinate chapters in the visited distict, a so-called " general regulation," designated as general regulation No. 40, was regularly proposed and unanimously adopted at the annual session of the Grand Chapter in the year 1923, which regulation No. 40 is as follows:

" (40). Each district shall arrange for the annual visit and reception of the Grand Matron and her staff at a convenient point in the district, the necessary expense of the same to be borne by a *pro rata tax* on the chapters according to their last reported membership, *the ratio of the assessment* to be fixed by a majority of the chapters of the district. Such arrangement shall be under the direction of the District Deputy Grand Matron, who shall be empowered

to levy such *assessment* if the majority of the chapters fail so to do. Such *assessment* shall be remitted at least thirty days before the official visit to the District Deputy Grand Matron who shall, as soon as possible, after the visit, furnish to each chapter of the district a detailed report of the receipts and disbursements of the fund and pay over to her successor any unexpired balance." (Italics ours.)

In accordance with the provisions of said regulation No. 40, in the year 1925, at a meeting twenty-four of the twenty-eight matrons of the chapters in the Monroe district (the matron being the chief officer of each subordinate chapter), it was agreed to make a payment of twenty cents per member to cover the expenses of the annual visit of the Grand Matron and her staff to the Monroe district. Notice to this effect, with request that check be sent promptly, was given by the District Deputy Grand Matron of the Monroe district to all of the twenty-eight chapters in the Monroe district. All these twenty-eight chapters, except the relator chapter, in due course sent checks as requested. The relator chapter sent a check merely for the sum of fifty-one dollars and ten cents, which was at the rate of ten cents for each of its members. This check was promptly returned with a request that a proper check at the rate of twenty cents per member be forwarded by the Monroe Chapter. The relator chapter failed to comply with this request, with the result that on June 11, 1926, the District Deputy Grand Matron of the Monroe district gave formal notice to the relator chapter that " By authority in me vested as District Deputy Grand Matron of the Monroe district and in accordance with article 1, section 40, of the General Grand Chapter Regulation, and by virtue of the fact that a majority of the chapters of Monroe district have voted to pay the assessment of twenty cents per capita for defraying the expenses of the reception of our Grand Matron and her staff, I hereby assess the sum of $————, 20c. per capita according to the report of your membership December 31, 1925, and hereby direct that you forthwith forward this amount for the purpose hereinbefore set forth."

The relator chapter failed to comply with this notice of assessment, and, shortly prior to the annual meeting of the Grand Chapter in October, 1926, the Grand Matron formally notified the relator chapter that " The charter of Monroe Chapter of Rochester has been suspended by me as Grand Matron, which suspension carries with it the suspension of the individual members. This suspension is effective until the delegates have acted upon this matter. Therefore I direct that no delegates' cards of members of Monroe Chapter be viséed until such action is taken. Please notify the credential committee of this order."

At the annual meeting of the Grand Chapter in October, 1926, this suspension of the petitioner chapter was approved, but the individual members of Monroe Chapter were voted to be reinstated as members of the order. Thereafter the petitioner chapter, claiming that the suspension of its charter had also been annulled by the proceedings at such annual session of the Grand Chapter, attempted to hold meetings and function as a chapter in good standing. The Grand Matron thereupon appeared and presided at a meeting of the petitioner chapter held on November 16, 1926, and, when a motion to pay the assessment was lost, the Grand Matron demanded and received the charter of the petitioner chapter, thereby suspending such chapter, and officially declared: " The members of said chapter suspended from all the rights and privileges of the order. This suspension will hold until Monroe Chapter pays in to my hands the assessment as levied by the junior past district deputy and affirmed by action of the Grand Chapter October 14, 1926."

The Grand Matron, in an official communication dated January 25, 1927, after stating there was some uncertainty in Eastern Star circles as to the status and rights of the members of Monroe Chapter, No. 57, as individuals, since the suspension of its charter, then stated: " I, therefore, feel that I should at once clearly state that it never was my intention to suspend the individual members of Monroe Chapter, No. 57, from any rights or privileges in the Order of the Eastern Star of the State of New York, except in so far as such rights might be affected by the suspension of the charter of their chapter. Such individual members still retain membership in the order with all their original rights and privileges except in respect to the inconvenience incident to the suspension of the charter of the home chapter."

The charter of Monroe Chapter, No. 57, thus stands suspended and in such situation its individual members are deprived of the full exercise of some of the substantial privileges and rights of membership. With these facts in mind, we will examine chapter 56 of the Laws of 1916, the special legislative act creating this membership corporation, which is entitled, " An act to consolidate several organizations affiliated with the Order of the Eastern Star in the State of New York, and to incorporate the consolidated body under the corporate name of ' Order of the Eastern Star of the State of New York,' " and provides by section 1 of the act that the order shall have all the " general rights, powers, privileges and immunities of corporations organized for similar purposes under such general laws." Section 5 of this special act provides: " The constitution, regulations and code of procedure of the existing grand chapter of the Order

8

of the Eastern Star of the State of New York shall be continued as the constitution and by-laws of the corporation hereby formed; and the grand chapter of such corporation shall have power from time to time to amend, alter, add to or otherwise change the same or adopt a new constitution, by-laws, regulations and code of procedure as it may deem proper for the proper government and control of such corporation, its grand and subordinate chapters and their officers and members."

The determination of the question whether this corporation has power to levy and impose an assessment for any purpose must depend upon the statute under which it is created. The respondent membership corporation is vested by the special act of its creation (Laws of 1916, chap. 56) with all the " general rights, powers, privileges and immunities of corporations organized for similar purposes under such general laws." It is clear from this statutory language that the sovereign power through the Legislature did not invest this particular membership corporation with any rights, privileges or powers in respect to levying or imposing assessments except those granted generally by the Legislature to other membership corporations, as provided and set forth in the Membership Corporations Law. The present section 20 (formerly section 8) of the Membership Corporations Law of 1926 (Laws of 1926, chap. 722) has remained unchanged at least since 1895, and provides:

" § 20. By-laws. A membership corporation, created by or under a general or special law, may have a constitution, by-laws and rules, which shall be collectively known as by-laws and may provide different methods for the amendment and repeal thereof. The by-laws of any such corporation may make provisions, not inconsistent with law or with its certificate of incorporation, regulating * * * the fees and dues of members and the termination of membership on non-payment thereof or otherwise. * * * "

The charter of this particular membership corporation is the legislative enactments contained in the special act of the Laws of 1916, chapter 56, the General Corporation Law so far as applicable, and the Membership Corporations Law. The so-called constitution, the by-laws and the regulations of the order are not strictly the charter, but all are merely by-laws under an appropriate name. (*Burns* v. *Manhattan Brass Mut. Aid Soc.*, 102 App. Div. 467.) After a careful search, I find no statute of this State which grants to a membership corporation the power and authority to impose or levy an assessment as a means of raising money to finance its legitimate activities and maintaining its organization. By the plain language of the statute, only " dues " and " fees " may be established and regulated. Nothing is said about " assessments," and

this omission by the Legislature in my opinion was deliberate and not accidental. The statute must control, and, when properly construed, the grant of power to establish and regulate " fees " and " dues " cannot be held to include the power to levy assessments. The distinction between " dues " or " fees " and " assessments " was well stated by Mr. Justice BLACKMAR in the case of *Thompson v. Wyandanch Club* (70 Misc. 299, at pp. 305, 306), where he said: " The term ' assessment ' always carries with it the idea of a burden imposed *in invitum*, and a single act as distinguished from recurring acts. Every man experienced in business recognizes the meaning of ' assessment ' as distinguished from ' fees ' or ' dues.' Fees are the amount paid for a privilege. They are not an obligation, as the payment is voluntary. Such is an initiation fee of a club. With reference to clubs and other membership corporations, the meaning of the word ' dues ' is settled. It means the obligation into which the members enter to pay a sum to be fixed, usually by by-laws, at recurring intervals, for the maintenance of the organization. Every club has its initiation fee, and some have fees for other special privileges. In all cases, the payment is voluntary. Every club has its dues fixed by itself, payable periodically and creating a debt by the member to the club. An assessment * * * is different. It is not a fee; it is not dues; and, as the club was given no power to impose obligations on its members, except to establish fees and dues, it was done without authority and was void."

The contention of the respondent order that the subject-matter of regulation No. 40 is something other than an " assessment " cannot meet with judicial approval. Its specific language expressly provides for " a *pro rata* tax," for " the ratio of the assessment," expressly gives power to an officer of the order " to levy such assessment if the majority of the chapters fail so to do," and requires payment before a certain date of " such assessment." Such language cannot properly be held to relate either to " fees " or " dues." It is nothing else than an " assessment " here attempted to be enforced against the will of objecting members of the relator chapter by punishment of suspension both of the charter of the chapter and of its individual members. Mr. Justice BLACKMAR further says, concerning the power to levy assessments (70 Misc. 299, 306): " Membership corporations have no inherent power to levy assessments on their members. But the very statutory scheme of organization of membership corporations is inconsistent with the existence of such a power. It authorizes such a corporation to purchase and hold land to the extent of $6,000,000. General Corp. Law, § 12. If the power to assess existed, the majority of the board of directors might impose a heavy burden on the members by assessing for the purchase

of property. On the other hand, the liability for the debts of the company rests on the directors. Notwithstanding this, they may exercise the power given them by the statute of fixing the dues; and, if too heavy, the members may avoid them by resigning. But their liability for the debts is inconsistent with an implied power to shift the debts on the members by an assessment operating immediately. A power to impose an obligation on another against his will cannot be spelled out of doubtful language. *Unless the power to assess is plainly expressed in the law, it should be held not to exist.*" (Italics ours.)

The court has no power to enlarge the legislative grant of powers by adding to the plainly expressed powers the further and additional power to levy assessments. Nor can a membership corporation such as this respondent corporation, even by unanimous action of its Supreme Council or Grand Chapter, or of all its subordinate chapters or of all its members expressed in a so-called constitution, by-law or regulation, or otherwise expressed, change or alter the statutory law of its creation, or enlarge to any extent whatever the powers conferred on the corporation by such law. Throughout this controversy the record discloses that both the petitioner and the respondents have acted entirely in good faith. I am satisfied that the petitioner chapter and its members have exhausted their remedies within the order. In my opinion it would be useless to try to have the questions here presented litigated otherwise than in a regular judicial forum, where they can be decided with finality. (*Bray* v. *Grand Lodge Knights of Pythias,* 121 Misc. 764.)

I am constrained to decide, for the reasons above stated, that the respondent order had no legal authority to impose or enforce the questioned assessment, and accordingly grant the application of the petitioner, and direct that a peremptory mandamus order issue against the respondents for the relief demanded in the petition. Submit order on notice.