## GARDEN CITY GOLF CLUB v. CORWIN.

District Court, E. D. New York.
Feb. 15, 1932.

[black redaction bars]

Greene & Hurd, of New York City (Chase Mellen, of New York City, of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Lyndon H. Baylies, of Washington, D. C., of counsel), for defendant.

INCH, District Judge.

The plaintiff, Garden City Golf Club, has brought this action against Walter E. Corwin, individually and as collector of internal revenue, to recover the sum of $5,530, with interest, paid April 16, 1931, and representing a 10 per cent. tax assessed and collected in accordance with the provisions of section 413 (a) of the Revenue Act of 1928, entitled "Tax on Club Dues or Fees" (title 26 USCA § 872). Plaintiff claims this tax was erroneous and illegal, and that the amount so paid by it should be returned.

A jury has been duly waived. The facts have been duly stipulated. Plaintiff's Exhibit 1. The sole question presented is one of law.

The function of our government and the intent of Congress is not to tax as much as possible but to tax as little and as reasonably as necessity requires.

For that reason, where a doubt exists as to the meaning of a tax statute, the taxpayer should receive the benefit of such doubt. Shwab, etc., v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; Smietanka v. First Trust, etc., 257 U. S. 602, 42 S. Ct. 223, 66 L. Ed. 391; United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547.

At the trial, bearing the above in mind, the argument of counsel for plaintiff impressed the court as having weight so far as the greater portion of this tax was concerned, but careful consideration of the facts and the law has compelled me, I confess against my own inclination because of the great usefulness of such clubs for health and necessary recreation, to decide that the tax was properly imposed.

The plaintiff is a membership corporation, duly incorporated, over thirty years ago, under the laws of the state of New York. It has since maintained a golf club and course at Garden City, Long Island, and is one of the oldest and most highly esteemed golf clubs in the United States.

By the constitution, by-laws, etc., of the club, the control and management of the club is vested in a board of governors consisting of twelve members. There are, in addition, the usual officers and committees. There are several classes of members, regular, associate, life, honorary, and absentee. The latter class are those who may be continuously absent from the United States for a period exceeding one year. The honorary class are those who have achieved distinction in any field of endeavor. The life and associate class are limited to thirty-five and twenty-five in number, respectively, while the regular membership is limited to three hundred and fifty.

It is thus seen that the source of revenue for the upkeep of this club is limited. This limitation is further increased by the fact that the initiation fees and dues are moderate; the annual dues of the regular members being $200 while the initiation fee is $500.

An examination of the charter, constitution, by-laws, and rules of plaintiff reveals no authority in the board of governors to impose an "assessment."

So far as I have been able to find from the few authorities on the subject, it would seem that, if such assessment had been resisted in this state, by any member, such resistance would have been successful. Thompson v. Wyandanch Club, 70 Misc. Rep. 299, 127 N. Y. S. 195.

The above was the situation when it became advisable, on or about January 3, 1930, for the board of governors to consider the necessity of raising a considerable sum of money for the purpose of closing a road through the property of the club and the substitution of a new one, together with changes in the location and erection of buildings which this would entail or make advisable, together with several other necessary expenditures for the comfort of the members and the better financing of the club.

Accordingly a meeting of the board of governors was held on said date at which eight of the members of the board were present and four were excused from attendance. The question discussed was how to raise this necessary money.

We may pause here to set forth the appropriate section of the tax statute about which this controversy has arisen.

Statute involved—section 413 of the

Revenue Act of 1928 (title 26, USCA § 872, 45 Stat. 864) provides:

"Sec. 413, Club Dues Tax.

"(a) Section 501 of the Revenue Act of 1926 is amended to read as follows:

"'Sec. 501. (a) There shall be levied, assessed, collected, and paid a tax equivalent to 10 per centum *of any amount paid* —

"'(1) *As dues* or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $25 per year; or

"'(2) *As initiation fees* to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $25 per year. ˅ * *

"'(d) *As used in this section, the term "dues" includes any assessment irrespective of the purpose for* which made; and the term "initiation fees," includes any payment, contribution, or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned.'" (Italics mine.)

Bearing this law in mind, we return to the meeting of the board of governors. The president, after reporting these various items requiring money, made the following recommendation among others: "That the Club undertake to raise the necessary amount by *permissive assessment* on the part of the membership. That *a permissive assessment* on the membership be requested at the rate of $150, from each member, *or*, a general meeting be called *to increase the dues* to meet this past and prospective necessary expenditure."

He also called attention to the fact that: "*The dues* of the members of the Garden City Golf Club *are at present the lowest* of any club around New York of equal standing and that these necessary expenditures must be met if the club is to continue to give the members what they want and have a right to expect."

The board thereupon, after due consideration, duly passed a motion by which the president was "authorized to prepare a letter to the members in which the above matter should be explained for their information and *assent requested to an assessment of $150, from each member.*"

Pursuant to this motion, on March 20, 1930, the president sent to the members, except the honorary members, a letter which set forth all the facts and this necessity for raising the gross sum of $52,500. This letter closed with the following:

"As all our present income is needed for operative expenses *two courses seem available* to enable the Board of Governors to obtain this sum namely *to increase our present annual dues* of $200—the lowest of any club of equal rank—*or to ask the members to submit to an assessment of $150,* each.

"The Board has decided on the latter course and invites the cooperation of the members to safeguard the links and to maintain the Club's high standard.

"A blank indicating how the *assessment* may be paid is enclosed for the convenience of the members."

This blank, in substance, was as follows: "I accept the assessment of $150, for the purpose stated in the President's letter of March 20, 1930."

A large majority of the regular members paid this proportion in full. A few members paid a lesser sum. The honorary members paid their share as well, while a few members refused or omitted to pay anything. No steps were taken nor indicated that any penalty of any sort for nonpayment were taken or even contemplated. In addition, this $150 was added to the requirements for admission to membership of certain applications pending.

Thereupon the government, under the provisions of the law already set forth, imposed a tax of 10 per cent. on this sum so raised, making a tax of $5,530. This action was duly commenced by plaintiff to recover this tax so paid.

Plaintiff claims that this tax was erroneously assessed and illegal, in that the fund so collected was not an assessment, for the reason, first, that the corporation had no power under the laws of the state of New York to levy any such assessment; second, that Congress did not intend to include in the term "assessment" as used in this tax statute a voluntary payment by members under such circumstances as here shown.

The government contends, on the contrary, that the argument that the board was without authority to levy an "assessment," even if correct in law, is without merit; that what happened in this case was exactly what Congress had in mind when it amended the act in question by the words, "*The term 'dues'*

*includes any assessment irrespective of the purpose for which made."*

█ It must be conceded that there is a difference between the term "dues" and the term "assessment." Dues referring to "stated amounts" which the members must pay periodically for the continuing privilege of membership.

. However, "cases might be imagined in which it is difficult to distinguish between dues and assessments." Thompson v. Wyandanch Club, 70 Misc. Rep. 299, 127 N. Y. S. 195, 201. See, also, for various definitions, 5 Corpus Juris 814–816, and cases there cited.

"The term 'assessment' may have different meanings according to its use and must be construed according to the context." 5 Corpus Juris, 816, and cases cited.

While, generally speaking, "dues of a club, initiation fees and assessments," are associated, in the public's mind, with the continued right of membership, an "assessment" by a club may be a specific demand or request by the club upon its membership, as a whole or as a class, for a certain sum of money; the proportion to be paid by each member being stated.

█ The penalty for nonpayment, while also often times a part of the contract of membership, is not absolutely essential, in all cases, to the creation of an assessment of this character. Notice of a penalty need not necessarily accompany the demand or request. Such penalty, even if its imposition was contemplated, may be, and not infrequently is, waived or rendered unnecessary by prompt payment.

The question before this court is not as to the power of Congress to tax this fund, but whether or not Congress has in fact taxed it lawfully? .

█ Therefore, bearing in mind the different meanings of the term "assessment," and construing it in accordance with the context of the tax statute in question, we follow the rule of construction that is, of course, well known and was only recently applied by the Supreme Court (U. S. v. Ryan, 284 U. S. 167, 52 S. Ct. 65, 68, 76 L. Ed. ——) :

"All laws are to be given a sensible construction. A literal application of a statute which would lead to absurd consequences is to be avoided whenever a reasonable application can be given *which is consistent with the legislative purpose.* United States v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986; United States v. Jin Fuey Moy, 241 U. S. 394,

36 S. Ct. 658, 60 L. Ed. 1061; United States v. Palmer, 3 Wheat. 610, 631, 4 L. Ed. 471.

"Notwithstanding the broad language of the section, *we think it may be given a reasonable construction,* and *the one most consistent with its apparent purpose,* by the application of the principle noscitur a sociis. * * * *By reason and analogy, as well as by context,* we conclude that the general words 'all personal property whatsoever' were intended to include chattels other than the specified tools and implements, but to be restricted to those which, like tools or implements, are related to one or the other of the principal things, or *incident* to their intended use or disposition in fraud of the revenue." (Italics mine.)

█ Section 501 of the Revenue Act of 1926 (44 Stat. 92) created a tax "equivalent to 10 per centum of any amount *paid* * * * (a) as *dues* or membership fees."

In 1928 Congress amended this section 501, by section 413 (a) of the Revenue Act of 1928 (26 USCA § 872 (d), as follows: "(d) As used in this section, the term *'dues' includes any assessment* irrespective of the purpose for which made."

The purpose of Congress in making this amendment is shown in the Journals of Congress and its committees, and they may be consulted. McLean v. United States, 226 U. S. 374, 33 S. Ct. 122, 57 L. Ed. 260; Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525.

The Committee on Ways and Means of the House made a report in respect to this proposed amendment (Report 70th Congress, page 26, First Session December 7, 1927). In this report this committee states: "It has been found *that the tax on 'dues' is being evaded by the device of lowering the amount of dues and collecting the money by 'assessment.'* "

The Committee on Finance of the Senate (May 1, 1928, 70th Congress, First Session) likewise made a report in which it states: "The House Bill amends the existing law to *take care of the situation which has arisen from the prevalent use of the device of lowering the amount of club 'dues' and collecting the required money by 'assessment'* instead as a means of evading the club *dues* tax."

It is thus plainly shown that, while the tax is upon *club dues paid,* the *purpose* of Congress, in including under this head "assessments," was to endeavor to overcome the efforts of those who would avoid the tax on

"dues" by properly claiming that the necessary money had been raised by "assessment." Therefore Congress enacted that, where such substitution for "dues" was shown, the fund so raised by "assessment" was to be taxed under the provision for tax on "dues," the term "dues" to include the term "assessment" for any purpose.

Applying this statute, with its said purpose, to the facts of this case, we find that a considerable sum of money was necessary to be raised by plaintiff. The president of the club stated to the board of governors the financial requirements, and urged that there were but two courses open, one to raise the dues sufficiently to meet the expenditures, the other to "assess" the members $150 each. The board of governors decided upon the "assessment." Accordingly, a letter was sent to the members, by the president, setting forth these two ways of raising the money, and, realizing that there was no power to legally assess, asking each member to voluntarily accept such assessment.

If the board of governors had decided on the method of raising the money by raising the dues, or, if the members had refused to accept the assessment and had agreed to an increase of dues, this fund so raised would present no question as to the correctness of the tax. Instead, the opposite course was taken, and, instead of raising the dues, the money has been raised by a voluntary assessment. This was exactly what Congress had in mind in enacting the amendment.

■ Needless to say, no member of the board of governors or any of the members of the club had the slightest idea or desire to evade any tax.

The government concedes that this effort by the board of governors, in its appeal to the membership, was not a "device" to evade the tax.

The question of intent, however, is not material if what was actually done was reasonably within the purpose of Congress in so amending the statute. Weiss v. Stearn, 265 U. S. 242–254, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520.

■ While the mere name is not too important, both the board of governors and the members, excepting the few that refused to sign, have expressly called the method pursued an "assessment."

I agree with the government that it appears here that, if the amount had not been raised by this voluntary assessment, the other alternative presented to the membership was a corresponding increase in their dues. The tax is on the amount paid, whether by dues or assessment.

This is not a controversy between a member and his club as to its right to assess him. The members have paid the assessment, preferring to waive any legal rights in this regard. With this choice the government is not concerned. Apparently it would be an insufficient objection even if the question of the legality of the assessment was to be considered. U. S. v. Emery, etc., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825; Boston v. U. S. (C. C. A.) 265 F. 578; Sullivan v. U. S. (C. C. A.) 15 F.(2d) 809; U. S. v. Sullivan, 274 U. S. 259, 47 S. Ct. 607, 71 L. Ed. 1037, 51 A. L. R. 1020.

The fund has been paid in by an assessment in place of an increase of dues. The tax thereon was proper, and the amount paid cannot be recovered.

■ There remains but the question of the "initiation fee." This was also increased by the amount of this "assessment" and paid by the applicants. This additional amount so paid was, in my opinion, a part of the initiation fee. This also applies to a certain member who had resigned in 1927 and who subsequently was readmitted on the payment of back dues and this sum. These payments required were conditions to be met in order to become a member. Munn v. Bowers (C. C. A.) 47 F.(2d) 204, certiorari denied 283 U. S. 845, 51 S. Ct. 492, 75 L. Ed. 1454.

■ The burden of proof was on the plaintiff to show that it was entitled to recover this tax.

In my opinion the proof shows that the tax was properly imposed both as to the club dues, a term which includes the assessment voluntarily paid and such as here took place, and on the initiation fees. Judgment must be given for the defendant.

The objections of plaintiff to the materiality and relevancy of certain of the stipulated facts are each overruled and exception granted.

Findings of fact should be submitted. The order for judgment should be settled on notice.